## C. I. T. CORPORATION, Plaintiff, *v.* VINCENT PEPE and Others, Defendants.

Supreme Court, Erie County, May 29, 1930.

*Howard Saperston,* for the plaintiff.

*George F. Plimpton,* for the defendant Auto Apartments, Incorporated.

CHARLES B. WHEELER, Official Referee. A corporation known as the " One Hundred Sixty-Eight Pearl Street Corporation " was the owner of certain real property in the city of Buffalo running from Pearl street through to Franklin street. It also owned adjoining this property a parcel of land fronting on Franklin street known as No. 91 Franklin street, but not extending through to Pearl street. A brick wall separated the two properties, and there was no entrance from one to the other.

On June 15, 1928, the owner leased to the "Auto Apartments Incorporated of Greater New York " the two properties in question for the purposes of a public garage to be known as the Shelton Square Garage. This leasing was to include the sale of gasoline and other motor supplies. As rental the lessee agreed to pay a certain percentage of the profits from this operation of the garage.

The lessee went into possession and later had the opportunity of subletting the parcel known as No. 91 Franklin street to Vincent Pepe and associates operating as the Forty-five Cent Cab Company. By and with the consent of the owner of the property a

sublease was made to the Forty-five Cent Cab Company, for an annual rental of $900 and the cab company agreed on its part to purchase their entire gasoline requirements from the garage company. This sublease further provided the lease might be canceled on three days' notice if the lessee made default in the payment of rent.

The cab company went into possession, operated some twenty-five cabs and bought its gasoline from the garage company, paying for the same at the end of each month. The gasoline was delivered to the cab company at No. 91 Franklin street, and it supplied its cabs with it as required. However, on ————, 192–, it got into financial difficulties, was unable to pay its rent to the garage company, and also unable to pay its bill for gasoline furnished it by the garage company which amounted to about $1,200.

The manager of the garage company called on the officers of the cab company, demanded payment and was informed of its inability to pay, whereupon the manager of the garage company, without the protest and with the apparent consent of the cab company, took possession of the place, and of some nineteen cabs in it, and asserted the right of a lien thereon for the unpaid bill for gasoline furnished. The cabs in question so taken were held or owned by the cab company under conditional contracts of sale held by the plaintiff in this action, the C. I. T. Corporation, which brought this action to replevy the possession of the cabs, and the sheriff by virtue of a warrant demanded their delivery and possession. It was then agreed by stipulation of the plaintiff and the garage company that the sheriff might take the cabs, and that any lien the garage company might have on such cabs should attach to any fund arising on their sale.

In this way the question as to whether the garage company had or has any such lien now comes before this referee for determination.

Section 184 of the Lien Law (as amd. by Laws of 1929, chap. 28) gives the owners of garages a certain lien for gasoline furnished motor cars.

Eliminating all unnecessary matter, the statute reads: "A person keeping a garage or place for the storage, maintenance, keeping or repair of motor vehicles   *   *   *   and who in connection therewith *   *   *   furnishes gasoline or other supplies therefor at the request or with the consent of the owner   *   *   *   has a lien upon such motor vehicle   *   *   *   for the sum due   *   *   *   for furnishing gasoline or other supplies therefor and may detain such motor vehicle   *   *   *   at any time it may be lawfully in his possession until such sum is paid."

The statute was undoubtedly enacted for the protection of garage owners selling gasoline or furnishing supplies to owners of cars who patronized the garage or housed or stored their cars in it. The referee is of the opinion the statute does not go to the extent of giving a lien on cars for gasoline sold simply because such gasoline happened to be used in operating such cars. If that construction of the statute were to obtain, then a garage owner selling gasoline might assert a lien for gasoline sold to operate a car a mile away from the place of sale.

As was said in the case of *Willys-Overland, Inc.*, v. *Prudman Automobile Co., Inc.* (196 N. Y. Supp. 487) the section was intended to protect garage keepers against the rule of the common law that interruption of actual, continuous and exclusive possession was inconsistent with the existence of a lien. Hence, permitting the use by the owner from time to time of his car does not operate as a waiver of the lien.

In the case now under consideration there never was any possession by the garage company until it took possession after default in the payment of rent. It is difficult to see how the garage company, by merely taking possession, could acquire a lien if it had none before. The premises known as No. 91 Franklin street had been leased to the cab company. The cab company had sole and exclusive possession, not only of the leased property, but of the cabs stored or housed in it. The possession of the cabs was never given over to the garage company until after all the gasoline in question had been sold to the cab company. The relation of the parties to each other was simply that of debtor and creditor. If the garage company had no present or existing lien then it could not create a lien by simply stepping in and subsequently asserting one, and taking possession of the car.

As the referee has said, if a different rule were to obtain then the garage company might assert a lien on a car never in its custody or care by asserting it had sold gasoline to its owner to be used in the car. We do not so interpret the statute. Certainly the owner could not create such a lien against others having legitimate claims on the car.

As a conclusion of the whole matter, we decide the garage company had and has no lien on the nineteen cars delivered to the sheriff.